Filed 3/4/26  P. v. Sanchez CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAUL SANCHEZ,<br><br>    Defendant and Appellant. | E084408<br><br>(Super.Ct.No. RIF2101284)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Affirmed.

David P. Lampkin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

In 2024 a jury convicted Raul Sanchez of first degree murder, attempted murder, and assault with a deadly weapon. He appealed his judgment. His attorney has filed a brief under the authority of *People v. Wende* and *Anders v. California*[1] informing this court they were unable to identify any errors and asking us to perform an independent review of the record. We affirm.

## BACKGROUND

Late in the evening of February 27 and into the early morning of February 28, 2021, over a 100 people were partying in the Santa Ana River bottom. This included a group of friends composed of A. Saucedo, E. Cabrera, D. Ortiz, R. Saldana, and M. Rosas (sometimes referred to as M. Lopez). In another group was I. Almanza, who was there with her then boyfriend, Sanchez. Rosas and Almanza knew each other because they had attended the same high school, and also because a year prior Rosas's then-girlfriend and Almanza fought each other.

As the first group was leaving, they passed Almanza and someone they believed was her boyfriend—whom some members of the group later identified as Sanchez. Almanza insulted Rosas. Rosas kept walking, but Sanchez followed, asking Rosas how he knew Almanza. Sanchez challenged Rosas to fight, but Rosas declined. Sanchez then called over another, larger man. The larger man put Rosas into a headlock, but Rosas was able to get out of it.

---

[1] *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*); *Anders v. California* (1967) 386 U.S. 738 (*Anders*).

Most of Rosas's group continued towards Cabrera's car, but Saldana went to his motorcycle. When Rosas escaped the larger man, the man then approached Saldana and demanded his bike. When Saldana refused, the big man started hitting him. Saucedo tried to intervene but was also attacked. Cabrera then got involved as well, and it turned into a scuffle between multiple people. At some point both groups—Sanchez's and Saldana's—were involved in two or three distinct fights. When the dust finally settled, Saldana's friend group saw him lying face down near his motorcycle. When Saucedo went to check on Saldana, someone stabbed Saucedo. The group dragged Saldana to Cabrera's car and could tell he was severely injured. They drove directly to a hospital, but Saldana passed away from his injuries.

Examination revealed Saldana suffered multiple stab wounds to his shoulder, arm, and back, but the fatal stab wound was to his chest. Saucedo suffered a stab wound to his left chest which punctured his lung, but survived.

Witnesses told police they saw a man with a gray sweatshirt and curly hair holding a knife. However, police were not able to identify this potential assailant. Police then conducted a warranted search of Almanza's phone records and Instagram account, which revealed a large number of contacts between her and Sanchez—who has curly hair. Based on this, they also executed a warrant for Sanchez's phone records, including his location details. These records revealed that both Almanza and Sanchez's phones were in the area of the homicide at the relevant time, and leaving together after the homicide. Police then presented four witnesses with a photo lineup that included a photo of

3

Sanchez, but only Rosas was able to positively identify Sanchez. Based on this, police arrested Sanchez for attempted murder.

The day after arresting him, police put Sanchez in a cell with undercover officers. The undercover officers then spoke to Sanchez about the case while the conversation was being electronically monitored. Sanchez admitted to stabbing two people, one of whom died. The officers also encouraged Sanchez to think hard about whether he wanted a lawyer to represent him when talking to the police. After about an hour and a half, police removed Sanchez from the cell, gave him *Miranda*[2] warnings, and formally interviewed him. Sanchez denied wearing a gray sweatshirt the night of the homicide and denied stabbing anyone. At the end of the interview he requested a lawyer.

Sanchez then returned to the cell and continued talking to the undercover officers. However, just five minutes later Sanchez told his jailers that he wanted to talk to the interviewing officer again. After being given *Miranda* warnings for a second time, Sanchez admitted he stabbed two people, but claimed it was in self-defense.

The Riverside County District Attorney charged Sanchez with premeditated murder (Pen. Code, § 187, subd. (a))[3], attempted murder (§§ 664/187, subd. (a)), and assault with a deadly weapon (§ 245, subd. (a)(1)). The prosecution also alleged that Sanchez personally used a deadly weapon in the commission of the murder and attempted murder (§ 12022, subd. (b)(1)), that he personally inflicted great bodily injury in the

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

[3] Unlabeled statutory citations are to the Penal Code.

4

commission of the attempted murder and assault (§12022.7, subd. (a)), and that there were a number of aggravating factors.

The case proceeded to a jury trial. At trial, Almanza testified that she, Sanchez, and Rosas got into a verbal dispute, but that she and Sanchez tried to leave before it escalated. According to Almanza, as she and Sanchez were trying to leave, three men jumped them. Almanza said that after she and Sanchez escaped the scuffle she saw Sanchez holding a knife. She testified that she took the knife from him but did not know what happened to it.

The jury found Sanchez guilty on all counts, and that the murder was premeditated first degree murder. They further found that the attempted murder was not premeditated, found the deadly weapon enhancement true as to the murder, and found the great bodily injury enhancements true as to both the attempted murder and assault with a deadly weapon. Sanchez previously waived a jury trial as to the aggravating factors, and the court found them true. It also reduced the first degree murder to second degree on Sanchez's motion. (See § 1181, subd. (6).) It then sentenced Sanchez to an aggregate indeterminate term of 26 years to life, composed of 15 years to life for the second degree murder, seven years for the attempted murder, three years for the great bodily injury enhancements, and one year for the deadly weapon enhancement. Under section 654, it also imposed and stayed a three-year sentence for the assault.

DISCUSSION

We appointed counsel to represent Sanchez on appeal, and counsel has filed a brief under the authority of *Wende* and *Anders*, setting forth a statement of the case and a summary of the facts and asking us to conduct an independent review of the record. Counsel's brief directed our attention to four potential issues:  (1) whether Sanchez's statements to the undercover officers after requesting a lawyer violated the Fifth and Fourteenth Amendments (see *Illinois v. Perkins* (1990) 496 U.S. 292; *People v. Orozco* (2019) 32 Cal.App.5th 802); (2) whether Sanchez's counsel was ineffective for failing to object on these grounds; (3) whether it was an unconstitutional interference with Sanchez's right to counsel for the undercover officers to recommend talking to police without a lawyer; and (4) whether it was error to allow a police officer to narrate the events of a cell phone video as it was played for the jury.  (See *People v. Son* (2020) 56 Cal.App.5th 689, 696-698.)  We offered Sanchez an opportunity to file a personal supplemental brief, and he has not done so.

We have independently reviewed the record for potential error as required by *People v. Kelly* (2006) 40 Cal.4th 106 and find no arguable error that would result in a disposition more favorable to Sanchez.

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:


CODRINGTON _____
Acting P. J.


MENETREZ _____
J.